UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00061-GNS-HBB

AMANDA LAWSON; K.B.H., by and
through her next of friend, Amanda Lawson;
A.L.T., by and through her next of friend,
Amanda Lawson; and J.B.T., by and
Through his next of friend, Amanda Lawson                                      PLAINTIFFS

v.

JACOB HEDGESPETH                                                                DEFENDANT

## MEMORANDUM OPINON AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 37).[1] For the reasons provided below, Defendant's motion is **GRANTED**.

### I.    BACKGROUND

On April 15, 2016, Officers Jacob Hedgespeth ("Officer Hedgespeth") and Jonathan Leigh ("Officer Leigh") with the Campbellsville City Police Department ("CCPD") responded to a domestic dispute at the home of Doug Thompson ("Thompson"). (Hedgespeth Dep. 14:7-17:9, Feb. 13, 2018, DN 37-3). During their response to the domestic dispute, Thompson told the officers that he could arrange a meeting in a local fast-food restaurant's parking lot so that officers

---

[1] Defendant has also filed a Motion for Leave to File Excess Pages (DN 36) and a Motion to Exclude Plaintiffs' Proposed Expert. (DN 38). In the former, Plaintiff contends the complicated issues and facts in this case justify exceeding the page limit articulated in LR 7.1(d). (Def.'s Mot. Leave File Excess Pages ¶¶ 1-2, DN 36). Plaintiffs did not object to the motion and Defendant's request is reasonable. Accordingly, the motion (DN 36) will be granted. Regarding the latter motion, because the Court does not rely on the expert witness in dismissing Plaintiffs' Section 1983 claims, Defendant's Motion to Exclude Plaintiffs' Proposed Expert (DN 38) will be denied as moot.

could apprehend William Tompkins ("Tompkins")—the respective husband, father, and step-father of Plaintiffs Amanda Lawson ("Lawson"), K.B.H., A.L.T., and J.B.T. (collectively "Plaintiffs"). (Hedgespeth Dep. 19:24-21:16). Officer Hedgespeth knew at the time that Tompkins had active warrants out for his arrest. (Hedgespeth 20:18-23:25).

The officers then arranged for Thompson to meet with Tompkins at the restaurant later that evening under the surveillance of at least three members of CCPD with the goal of apprehending Tompkins. (Hedgespeth Dep. 29:21-32:6). After the officers waited for some time with Thompson stationed in the restaurant's parking lot without any sign of Tompkins, Officer Leigh called the plan off, and the officers left the scene. (Hedgespeth Dep. 37:4-38:5). After failing to apprehend him at the restaurant, the officers agreed to look for Tompkins at his home on Gardner Street. (Hedgespeth Dep. 39:16-41:16).

The officers then began to execute their new plan. Officer Leigh directed officers to assemble in a high school parking lot near Tompkins' residence and remain there until Tompkins arrived. (Hedgespeth Dep. 42:3-43:12). Officer Hedgespeth testified that because Tompkins was a known flight risk, law enforcement planned to approach on foot from various directions upon his arrival, announce their presence, and surround Tompkins so that he could not escape the scene. (Hedgespeth Dep. 81:10-24).

Plaintiffs had been with Tompkins earlier that evening moving their belongings to another residence in Campbellsville. (Lawson Dep. 60:16-62:25, Nov. 27, 2017, DN 37-2). After Tompkins arrived at the Gardner Street residence with Plaintiffs in his vehicle, Tompkins parked on the street, exited his car and stood beside it holding a box he had retrieved from inside the vehicle. (Hedgespeth Dep. 51:5-56:25; Lawson Dep. 60:25-63:23). Upon seeing Tompkins, the officers approached while announcing their presence with "Campbellsville Police," "[d]on't

2

move," and "[g]et on the ground." (Hedgespeth Dep. 59:6-7; Lawson Dep. 63:25-64:1). Rather than complying with these commands, Tompkins jumped into the car and shut the door. (Lawson Dep. 64:1-6). Lawson repeatedly yelled at him to stop, screaming, "[d]on't run with my kids in the car." (Lawson Dep. 64:12). Tompkins ignored Lawson's pleas and drove the vehicle to the right, directly at Officer Hedgespeth, who was positioned a few feet from the vehicle's right front headlight. (Hedgespeth Dep. 58:2-9, 89:24-90:8; Lawson Dep. 64:13-65:2). Officer Hedgespeth testified that he tried to evade the vehicle by backing up to his left, but the vehicle was moving faster than he could retreat. (Hedgespeth Dep. 66:10-16, 79:15-22). As the vehicle came at him, Officer Hedgespeth responded by firing four shots aimed at the driver from in front of the vehicle. (Hedgespeth Dep. 66:23-67:3; Lawson Dep. 64:24-65:3). After the shots, Tompkins' vehicle changed course away from Officer Hedgespeth and sped off. (Hedgespeth Dep. 77:4-10; Lawson Dep. 65:4-7). None of the Plaintiffs were hit by any of the bullets. (Lawson Dep. 111:21-25).

After escaping the scene of his run-in with police, Tompkins exited the car and absconded on foot. (Lawson Dep. 65:4-66:6). Plaintiffs went to a family member's house, then brought the vehicle to CCPD for inspection, and took the minor Plaintiffs to the hospital. (Lawson Dep. 66:22-69:15). Tompkins was later arrested and eventually pleaded guilty to wanton endangerment and evading police. (Tompkins Dep. 23:12-25:2, 25:13-25, Feb. 7, 2018, DN 37-4).

Plaintiffs brought the present action against Officer Hedgespeth in his individual capacity under 42 U.S.C. §§ 1983 and 1988 for violations of their federal constitutional rights, and various state-law claims. (Compl. ¶¶ 1, 7, DN 1). Plaintiffs allege Officer Hedgespeth illegally seized them without legal process and used unjustifiable force, intimidation, and excessive force when firing his gun at the vehicle. (Compl. ¶ 12). Plaintiffs claim that they were subjected to unwarranted restraint and severe mental and physical pain because of Officer Hedgespeth's

3

conduct, and that his actions amounted to cruel and unusual punishment. (Compl. ¶¶ 15, 18). Plaintiffs also claim they "sustained physical and mental injuries and are entitled to their claims for medical expenses, past and future, physical pain and suffering, mental pain and suffering, anguish and humiliation and punitive damages," in addition to damages for Officer Hedgespeth's intentional infliction of emotional distress. (Compl. ¶¶ 23, 25).

Officer Hedgespeth now moves for summary judgment on the basis of qualified immunity, which he argues forecloses Plaintiffs' federal and state claims. (Def.'s Mem. Supp. Mot. Summ. J. 12, 31 DN 37-1 [hereinafter Def.'s Mem.]). In the alternative, Officer Hedgespeth argues Plaintiffs' claims should be dismissed because they have either failed to demonstrate the deprivation of any constitutional right or any state claims under applicable Kentucky law. (Def.'s Mem. 23, 32-33). Plaintiffs contend in response that Officer Hedgespeth is not entitled to qualified immunity because he violated Plaintiffs' clearly established rights when he shot into the vehicle. (Pls.' Resp. Def.'s Mot. Summ. J. 8, DN 47 [hereinafter Pls.' Resp.]). Plaintiffs further contend that they sufficiently alleged facts supporting their state law claims. (Pls.' Resp. 18-20).

## II. <u>JURISDICTION</u>

Plaintiffs raise claims invoking 42 U.S.C. §§ 1983 and 1988, as well as the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (Compl. ¶ 1). This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## III. <u>STANDARD OF REVIEW</u>

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating

4

the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catretti*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### IV. DISCUSSION

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Because Plaintiffs' Section 1983 claims are against Officer Hedgespeth in his individual capacity, he has asserted a qualified immunity defense. (Compl. ¶ 7; Def.'s Mem. 12). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). In order to shield officials from "undue interference with their duties and from potentially disabling threats of liability," qualified immunity protects "all but

5

the plainly incompetent or those who knowingly violate the law." *Id*. at 806; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating immunity is inapplicable. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citation omitted). There are two steps to apply qualified immunity as a defense: The court must first determine whether "the facts alleged show the officer's conduct violated a constitutional right," and then determine whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

When resolving cases where qualified immunity is raised, the court should initially identify the exact contours of the constitutional right claimed to have been violated. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (citations omitted). In the present case, Plaintiffs allege Officer Hedgespeth violated the Fourth Amendment's protection against the use of excessive force and the Eight Amendment's prohibition against cruel and unusual punishment, both made applicable to the states by the Fourteenth Amendment.[2] (Compl. 5). Thus, Plaintiffs claims could survive only if Defendant's actions violated Plaintiffs' rights under the Fourth and Eighth Amendments. *See Lewis*, 523 U.S. at 843.

A. **Fourth Amendment**

"The Fourth Amendment covers only 'searches and seizures . . . .'" *Lewis*, 523 U.S. at 843. There are no allegations in the Complaint that Officer Hedgespeth conducted a search, thus

---

[2] Plaintiffs also seek compensatory damages for Officer Hedgespeth violating the Fifth Amendment. (Compl. 5). Plaintiffs do not identify in their Complaint or response which right or rights guaranteed by the Fifth Amendment Officer Hedgespeth violated. Accordingly, the Court will only consider Plaintiffs' claims invoking the Fourth and Eighth Amendments.

Plaintiffs' claims can only be sustained upon the occurrence of a "seizure" as covered by the Fourth Amendment. To determine whether a seizure has occurred, the Supreme Court has explained:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*."

*Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989).

Applying this definition, the Supreme Court determined there was no Fourth Amendment seizure where a "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash." *Id*. Put another way, "[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment." *Lewis*, 523 U.S. at 845 n.7 (citation omitted); *see California v. Hodari D.*, 499 U.S. 621, 628 (1991) ("[A] seizure could [not] have occurred during the course of the chase because . . . that 'show of authority' did not produce his stop." (quoting *Brower*, 489 U.S. at 597)); *Logsdon v. White*, No. 1:13-CV-00073-GNS-HBB, 2015 WL 3849907, at *5 (W.D. Ky. June 22, 2015) ("Logsdon still does not prevail on this claim because he was still eluding arrest when the horse was allegedly rammed. The constitutional protection against excessive force requires first that there be a 'seizure.' . . . Because the alleged contact with the horse by the police cruiser occurred while Logsdon was still in flight and thus had not been seized, there is no viable excessive force claim.").

In the present case, there was no seizure when Officer Hedgespeth fired his weapon at the vehicle because Tompkins drove away from the scene with Plaintiffs in tow in defiance of the police officers' demands that he stop. (Lawson Dep. 64:3-65:5). It was not until much later when

7

police arrested Tompkins that any seizure occurred, and his arrest in no way amounted to a seizure of Plaintiffs while they were inside the fleeing automobile. Because there is no dispute that Tompkins fled police with Plaintiffs in the car, Plaintiffs were not seized and they have no claim that their Fourth Amendment rights were violated.

### B. <u>Eighth Amendment</u>

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Plaintiffs rely on the third clause for their Section 1983 claims and contend that Officer Hedgespeth inflicted cruel and unusual punishment upon them when he fired at Tompkins' vehicle. (Compl. ¶ 18).

"The Eighth Amendment, by its terms, applies only to post-conviction inmates." *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (citation omitted); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Pretrial detainees are, however, guaranteed equivalent rights to be free of cruel and unusual punishment not by the Eighth Amendment, but rather by the Due Process Clause of the Fourteenth Amendment. *Ford*, 535 F.3d at 495 (citation omitted); *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). Plaintiffs' cruel and unusual punishment claims under the Eighth Amendment will be sustained only if Plaintiffs can rightfully be categorized as post-conviction inmates. Therefore, the Due Process Clause of the Fourteenth Amendment would apply to Plaintiffs' cruel and unusual punishment claims if they were pretrial detainees. *Ford*, 535 F.3d at 495.

Plaintiffs in the scenario set forth in their Complaint are undisputedly neither post-conviction inmates nor pretrial detainees. Plaintiffs have neither been convicted of any crime in connection with the events of April 15, 2016, nor have they been incarcerated, so they cannot be categorized as post-conviction inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted) (noting that a prisoner must show that she "is incarcerated under conditions

posing a substantial risk of serious harm" to state a claim under the Eighth Amendment). Plaintiffs certainly were not post-conviction inmates as they raced in Tompkins' car toward Officer Hedgespeth. Likewise, Plaintiffs cannot be categorized as pretrial detainees, because they were never seized and therefore never detained. Moreover, the Supreme Court has instructed that excessive force claims against free persons should be analyzed under the Fourth Amendment; but as discussed above, the Fourth Amendment does not apply to Plaintiffs because they were never seized. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). Therefore, Plaintiffs' claims for the infliction of cruel and unusual punishment under both the Eighth and Fourteenth Amendments fail as a matter of law. *See Ford*, 535 F.3d at 495.

### C. State Law Claims

Plaintiffs also seek damages based on Kentucky state-law claims of assault, battery, intentional infliction of emotional distress, false imprisonment and malicious prosecution. (Compl. 2). The Sixth Circuit has held that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Accordingly, having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and they will be dismissed without prejudice. *See Moon*, 465 F.3d at 728; 28 U.S.C. § 1367(c)(3).

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Leave to File Excess Pages (DN 36) is **GRANTED**

2. Defendant's Motion for Summary Judgment (DN 37) is **GRANTED**. Plaintiff's federal claims are accordingly **DISMISSED WITH PREJUDICE**, and Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE**.

3. Defendant's Motion to Exclude Plaintiffs' Proposed Expert (DN 38) is **DENIED AS MOOT**.

Greg N. Stivers, Chief Judge
United States District Court

July 8, 2019

cc:     counsel of record